IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHEFFIELD and ROBINSON, | § | |
| Plaintiffs, | § | |
| v. | § | SA:25-CV-1442-XR (HJB) |
| TYSON FOODS, INC., et al., | § | |
| Defendants. | § | |

---

**PLAINTIFF SHEFFIELD'S REPLY IN SUPPORT OF**

**MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT XIII**

**AND OBJECTIONS TO DEFENDANTS' EXHIBIT D**

---

**TO THE HONORABLE COURT:**

Plaintiff Marcus Sheffield ("Plaintiff") respectfully submits this combined Reply and Evidentiary Objection. Defendants' Response is not a good-faith legal dispute; it is a calculated execution of their "Shadow Code" Standard Operating Procedure (SOP)—a systemic corporate architecture engineered to disenfranchise workplace injury claimants.

In the specific context of an injured worker, this "Shadow Code" operationalizes a deliberate administrative shell game designed to exploit the physical and financial vulnerability of the claimant. It functions by weaponizing bureaucratic misdirection to exhaust the claimant's resources, withholding mandatory Plan transparency to prevent the lawful evaluation of benefits, and introducing "stale" compliance records from severed employment terms to deceive the

1

Court. By actively insulating the true Plan Administrator behind unauthorized third-party shields while an employee suffers successive, undisclosed on-the-job injuries, the "Shadow Code" ensures that an injury claimant is systematically starved of the statutory protections guaranteed by federal law – while guaranteeing *The Enterprise's* recordable metrics remain low and shareholders stock value remain inflated.

---

## I. ARGUMENT

### A. The Repeated "Wild Goose Chase":

### Defendants Are Equitably Estopped from Claiming Plaintiff Directed His Request to the Wrong Entity.

Defendants' primary defense is that summary judgment must be denied because Plaintiff directed his statutory document request to the wrong entity (*Program Administrators, LLC*) at a Dallas address, rather than the principal corporate office of Tyson Foods, Inc. This argument is a disingenuous attempt to escape federal liability by exploiting an administrative shell game that Defendants themselves engineered.

Hard facts from the record completely expose this shell game. In Defendants' Response, they explicitly admit that Program Administrators, LLC was the *"third-party administrator responsible for determining appeals of benefit claims"* and that Tyson's own internal claims infrastructure specifically *"direct[ed] him to send any appeal to Program Administrators, LLC."* Plaintiff did not choose this entity or address out of thin air; Plaintiff mailed the statutory request to the exact entity and address Tyson explicitly instructed him to use for claims administration.

Defendants explicitly state on the record: *"During the timeframe relevant to Plaintiff's motion, Program Administrators, LLC was the third-party administrator responsible for determining*

2

*appeals of benefit claims.* (ECF No. 54 at 157 *(March 13, 2025, letter denying Plaintiff's benefit claim and **directing him to send any appeal to Program Administrators, LLC***)).

Defendants' attempt to distinguish between a statutory request received by the *de jure* Plan Administrator (Tyson Foods) versus a request received by the exact third-party proxy they explicitly commanded Plaintiff to use (Program Administrators, LLC) is a distinction without a difference. Tyson cannot formally delegate its administrative intake to a proxy and then penalize Plaintiff for following its exact routing instructions.

This exact tactical behavior is precisely what the U.S. Court of Appeals for the Fifth Circuit condemned as a **"wild goose chase"** in *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 482 (5th Cir. 2000), holding:

> ***"We agree that the lack of information and the behavior of various officials of the company led Bourgeois on a wild goose chase, effectively extinguishing his time to apply for benefits."***

The record conclusively establishes that Defendants deployed this "Shadow Code" routing trap **twice** to intentionally confuse the Plaintiff:

1. **The December 9, 2024 Letter:** (*Plaintiff's Notice of Filing Administrative Record*, pp. 182-183). Months prior to the statutory request at issue, Defendants issued written instructions affirmatively directing Plaintiff to communicate exclusively with "Program Administrators, LLC," asserting that the principal corporate parent was not the appropriate point of contact.

3

2. **The March 13, 2025 Letter:** (*Plaintiffs' First Amended Complaint*, pg. 157). Letters in the record establish that **twelve days *after* Defendants' authorized agent signed** for Plaintiff's formal February 2025 written request, Defendants' internal claims network issued an almost identical letter repeating the exact same directive.

Under the **Equitable Estoppel Doctrine**, Defendants are completely barred from asserting that Plaintiff directed his request to the "wrong entity," or utilized an improper address. An employer cannot delegate its claims administration to a third-party proxy, explicitly direct an employee to interface with that proxy, and then use that exact delegation as a shield to escape ERISA statutory penalties.

**B. The Reliance on the *De Facto* Administrator Bar Is a Corporate Red Herring: Plaintiff Followed Explicit Directives, and the Timeline Proves Actual Notice.**

In their Response, Defendants capitalize on the fact that Plaintiff's original motion looked to the *de facto* plan administrator doctrine to argue that notice to an administrative subsidiary binds the corporate parent. Defendants correctly note that the Fifth Circuit flatly rejects the *de facto* administrator doctrine for statutory penalties, and they argue that this bar entirely defeats Plaintiff's motion.

Plaintiff explicitly acknowledges this Fifth Circuit precedent and clarifies to the Court that any debate over the *de facto* administrator doctrine is an <u>absolute</u> **red herring**. While Plaintiff's original motion alternative-pleaded an integrated enterprise framework to account for Tyson's convoluted routing, the underlying record and the timeline – completely eliminate any structural need to rely on that equitable doctrine.

**The material reality is simple:** Plaintiff was merely doing exactly what he was told to do by the Defendants themselves. Plaintiff did not choose the address or the entity out of thin air. In both the December 9, 2024 letter and the March 13, 2025 letter, Defendants explicitly commanded the Plaintiff to route his inquiries away from Tyson's corporate headquarters and send them directly to Program Administrators, LLC. Because Defendant Tyson Foods, Inc. is the **actual, *de jure* Plan Administrator** by its own formal judicial admission (*Defendants' Responses to Requests for Admission No. 1*), its statutory disclosure obligations under **29 U.S.C. § 1024(b)(4)** are absolute, non-delegable, and active.

Furthermore, the undisputed timeline conclusively eviscerates Defendants' claim that Tyson Foods, Inc. was unaware of the document request or insulated by its subsidiary's mailbox. Plaintiff's formal statutory request was mailed on February 19, 2025, and signed for by Defendants' authorized agent on March 1, 2025. Tyson's internal corporate claims network then issued the March 13, 2025 letter **directly in response to that exact February letter.** This creates an inescapable reality: Tyson *had* actual, contemporaneous corporate notice of the letter, actively processed its contents, and **deliberately chose to ignore the statutory document request** contained within it. Tyson parsed the letter to address the underlying injury claims tracking data, but completely suppressed its mandatory disclosure duties while actively directing the Plaintiff away from Tyson's principal office.

Because Tyson Foods, Inc. is the admitted, *de jure* administrator, and because its own matching correspondence provides absolute proof that it received, reviewed, and selectively ignored Plaintiff's letter, the *de facto* doctrine is entirely beside the point. Plaintiff is asking this Court to hold this *de jure* administrator fully responsible for a statutory request received at the exact location it ordered the Plaintiff to use. **Tyson's argument that they are not responsible**

5

**because Plaintiff sent the request to a third-party entity is a disingenuous misrepresentation to this Court to get out of paying the statutory penalty for their willful disregard of the law and intentionally leading Plaintiff on a *wild goose chase*.**

**C. Rebuttal to Tyson's "Already Had the Document" Defense.**

Defendants assert in their Response that because Plaintiff eventually obtained the master Plan Document and attached it to his First Amended Complaint, no statutory penalty is warranted. **Defendants' assertion that Plaintiff 'already had' the Master Plan Document is a deceptive omission of fact. Defendants cannot prove they furnished the document in response to the February 19, 2025 statutory request because they never did.**

Under **29 U.S.C. § 1024(b)(4)**, the statutory duty falls squarely on the Plan Administrator to furnish the governing plan documents within thirty (30) days upon valid written request. This obligation belongs strictly to the designated *de jure* Administrator—Tyson Foods, Inc.—and must be satisfied through normal administrative channels.

An unrepresented worker's reliance on litigation discovery to uncover the foundational rules of his benefits program is the exact operational mischief ERISA penalties are designed to punish. Tyson cannot leverage their own total administrative silence as a defensive shield by claiming that a document subsequently obtained through alternate means cures an active, ongoing statutory default. Even if Defendants attempt to take credit for Plaintiff's acquisition of the Master Plan Document (which *they have not asserted*), they remain in absolute default regarding the Summary Plan Description (SPD). To date, Defendants have never produced the latest updated SPD in response to the February 19, 2025 request. Possession of the Injury Benefit Plan does not cure the failure to provide the plain-language SPD mandated by Congress.

**D. Rebuttal to Tyson's Pretextual "Vagueness" Defense:**

**A Good-Faith Administrator Has Clear Notice That a Request for All Relevant Documentation Inherently Encompasses Governing Plan Documents.**

Defendants' reliance on *Nationwide Children's Hosp.,* 2010 WL 291749 (S.D. Ohio 2010), is a deliberate strawman argument. Defendants attempt to draw a hard line between a 'regulatory' request for claim-relevant documentation and a 'statutory' request for the Summary Plan Description. Under the Fifth Circuit's 'clear notice' standard, this is a distinction without a difference. Because the SPD is the foundational instrument dictating the rules of the claim, a comprehensive, certified request for '*ALL information and documentation relevant to my claim*' inherently encompasses the governing statutory plan documents. Plaintiff is not seeking a **§ 1132(c)** penalty for a mere regulatory violation of the DOL's claims procedures **(29 C.F.R. § 2560.503-1)**; rather, Plaintiff is seeking the penalty for Defendants' direct violation of the strict statutory mandate under **29 U.S.C. § 1024(b)(4)**. Defendants cannot use a DOL regulation as a shield to excuse their absolute statutory default.

Defendants attack Plaintiff's summary of the February 19, 2025 letter in the original motion, pointing out that the literal text of the letter requested "*copies of ALL information and documentation relevant to my claim*" rather than explicitly typing out the phrases "Summary Plan Description" or "master Plan Document." Tyson attempts to manufacture a fatal defense out of this distinction, claiming the request was too vague to trigger statutory penalties under Section 1024(b)(4).

Plaintiff directly confronts and completely refutes this hyper-technical interpretation: a broad, all-inclusive demand for "*all information and documentation relevant to my claim*" **is the furthest thing from vague**. Under controlling Fifth Circuit precedent, a participant is never

required to use strict statutory codes, legal citations, or specific "magic words" to trigger an administrator's disclosure duties. The governing standard is strictly whether the request provides **"clear notice"** to a reasonable plan administrator of what information or documents the participant desires. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990). An ERISA Plan Administrator acting in good faith knows that the master Plan Document and the Summary Plan Description (SPD) are, by definition, **the absolute baseline** governing instruments of any benefit program. It is a legal impossibility to evaluate what is "relevant to a claim" without reviewing the foundational documents that dictate the claim's rules, coverage limits, and appeal protocols.

Tyson's own actions expose the bad faith of their current litigation posture. If Tyson was genuinely confused by Plaintiff's request, a good-faith administrator would have requested clarification. Instead, Tyson never asked for clarification—they simply stonewalled. They parsed the February letter, extracted the data needed to log internal injury metrics, and then intentionally chose to suppress the disclosure portion of the request. Tyson cannot execute a selective reading of a participant's letter to update their own tracking systems while manufacturing a pretextual "vagueness" defense to escape liability.

### E. Affirmative Proof of Resultant Prejudice: Plaintiff Was Systemically Blindsided on Administrative Appeals and Severe Medical Liabilities.

Defendants mischaracterize Fifth Circuit precedent by implying that a showing of prejudice is a strict prerequisite for the imposition of statutory penalties. While Defendants rely on *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323 (5th Cir. 1992), the Fifth Circuit has consistently held that under ERISA § 502(c)(1) [29 U.S.C. § 1132(c)(1)], prejudice is merely one

discretionary factor for the Court to weigh when deciding whether to penalize a Plan Administrator for non-compliance. The primary purpose of the statute is not just to compensate the participant, but to punish an Administrator's bad-faith failure to disclose and to compel transparency. Even completely absent a showing of prejudice, the Court retains full authority to impose the maximum statutory penalty.

To the extent this Court evaluates prejudice to determine the *quantum* of the penalty, Defendants' assertion that Plaintiff has failed to demonstrate actual harm is not a mere legal argument—it is an affirmative, bad-faith misrepresentation of the active discovery record. Defendants have been in physical, formal possession of Plaintiff's certified **Initial Disclosures** and underlying medical liabilities since they were served in these proceedings. Despite having full knowledge of the exact financial and physical trauma at issue, Defendants signed an Opposition brief boldly claiming that no concrete harm exists.

Additionally, Plaintiff has suffered severe, actual, and documented harm. Plaintiff sent his formal, certified written request for his claim file and Plan documents on February 19, 2025. The bad-faith nature of Defendants' non-disclosure is illuminated by the highly compressed chronological convergence of their absolute silence and their rapid-fire administrative denials:

- **February 25, 2025:** Exactly six days after Plaintiff mailed his document request, Tyson formally issued a denial of Plaintiff's internal administrative appeal for Injury #1.

- **March 13, 2025:** Tyson issued its formal denial for Injury #3, explicitly instructing Plaintiff to route any further appeals away from Tyson and toward their third-party proxy, Program Administrators, LLC.

Defendants willfully ignored the document request during the exact window Plaintiff was forced to navigate this internal agency appeals process. By withholding both the Summary Plan

Description (SPD) and the Master Plan Document during this critical timeframe, Defendants forced Plaintiff to prosecute his appeals completely blind. Plaintiff was unlawfully deprived of the binding rules governing his own claims, including required appeal procedures, strict internal deadlines, and fundamental plan definitions—such as the specific, rigorous parameters required to overcome non-disclosure presumptions and prove "Cumulative Trauma" under Section 1.15 of the Plan. It is a legal impossibility to effectively evaluate a claim denial or perfect an administrative appeal without first reviewing the foundational documents that dictate the rules. Furthermore, this operational blackout caused direct financial harm while Plaintiff was experiencing severe physical impairment. Attached as **Exhibits F-M,**[1] *in globo*, are the individual, redacted medical invoices documenting a total of **$13,430.78 in shoulder medical invoices** resulting from three successive workplace shoulder injuries sustained on October 16, 2023, August 16, 2024, and October 18, 2024.

By continuously withholding the master Plan Document and current SPD, Tyson forced Plaintiff to navigate these massive medical liabilities completely blind. Plaintiff was systemically blocked from reviewing the Plan's subrogation and reimbursement rights, identifying authorized medical provider networks, or understanding the exact administrative routing required to protect himself from collection activity. This blackout did not merely cause inconvenience; it paralyzed Plaintiff's ability to protect himself from financial liability while Tyson's agents actively coordinated his retaliatory termination behind a corporate wall. Defendants' 378-day delay severely hindered Plaintiff's ability to prosecute his injury claims internally and subsequently

---

[1] Exhibits F-M consists of Plaintiff's medical invoices, which have been narrowly redacted by Plaintiff to protect sensitive, unrelated medical information and personal financial identifiers pursuant to Fed. R. Civ. P. 5.2(a). This redaction was performed to strictly comply with the Court's stated preference against the filing of sealed documents under WDTX Local Rule CV-5.2(b). Unredacted copies remain in Plaintiff's possession and are available for *in camera* review if requested by the Court.

before this Court, fully justifying the imposition of the maximum $110.00 per day statutory penalty.

---

## II. EVIDENTIARY OBJECTION TO DEFENDANTS' EXHIBIT D

Pursuant to Fed. R Civ. P 56(c)(2), Plaintiff objects to the admissibility of Defendants' Exhibit D because it cannot be presented in a form that would be admissible in evidence to prove active plan participation or document disclosure in 2025, and it directly violates Federal Rules of Evidence 401, 402, and 403. This stale 2022 acknowledgment form cannot be used to support Defendants' opposition for the following specific reasons:

A. **The Admitted Break in Service:** In Exhibit B of *Plaintiff's Notice of Filing Administrative Record* (*cf.* pg. 14, within Tyson's formal *Position Statement* to the DOL), Defendants explicitly state that Plaintiff was **terminated from the Haltom City, TX facility in January 2023.** This permanent termination legally and factually severed the initial employment contract and ERISA participation period associated with the 2022 acknowledgment form found in Exhibit D.

B. **The Distinct Rehire Terms:** Plaintiff was subsequently **rehired** at the Dallas, TX facility in **October 2023**, and was later rehired again in Tennessee. All relevant injuries (Injuries 1, 2, and 3) and the 2025 statutory request **occurred during the second and third, distinct terms of employment.**

C. **Inadmissibility and Bad Faith:** An acknowledgment signature tied to a defunct, legally severed contract has no tendency to make the fact of a statutory disclosure under a *subsequent, entirely separate* rehire contract more or less probable (**FRE 401**). Presenting a 2022 signature as an evidentiary defense against a 2025 statutory request is a blatant

11

misrepresentation intended to induce unfair prejudice and confuse the issues by falsely implying employment continuity (**FRE 403**).

A 2022 signature from a legally severed period of employment cannot be used as a shield for a new, distinct period of employment and injury occurring in late 2023 and 2024. This definitively proves that Exhibit D is an obsolete record, introduced in bad faith to mislead the Court. Because Exhibit D is legally inadmissible, Defendants have failed to present any competent summary judgment evidence to dispute the fact of non-disclosure. Pursuant to **FRCP 56(c)(2)**, the Court should consider the failure to provide the requested documents as **undisputed for purposes of this motion.**

---

### III. CONCLUSION

Tyson's status as Administrator is **conclusively established**. Their reliance on Exhibit D is a legal impossibility and a misrepresentation of the rehire timeline admitted in their own formal Position Statement submitted to the DOL. A 2022 signature from a terminated employment term cannot satisfy a 2025 statutory request for updated Plan documents, and their manufactured "vagueness" defense fails under the Fifth Circuit's "clear notice" standard. Furthermore, their defense that Plaintiff subsequently obtained through alternate means completely highlights their administrative failure to satisfy their standalone statutory obligation. The repeated "wild goose chase" letters prove bad faith and an intent to misrepresent the claimant from the beginning. Plaintiff respectfully requests the Court **SUSTAIN** his Evidentiary Objection to Exhibit D, exclude it from consideration under FRCP 56(c)(2), and **GRANT** Partial Summary Judgment on Count XIII against Defendant Tyson Foods, Inc., awarding the maximum statutory penalty of

12

**$110.00 per day.**

---

**DATED:** May 28, 2026

---

Respectfully Submitted,


*/s/ Marcus T. Sheffield*

**Plaintiff**, *Pro Se*

---

### <u>CERTIFICATE OF SERVICE</u>

---

I hereby certify that on May 28, 2026, a true and correct copy of the foregoing was served via electronic mail on the following:

| | |
|---|---|
| Linda C. Schoonmaker lschoonmaker@seyfarth.com | **Seyfarth Shaw LLP** |
| Dena Moghtader dmoghtader@seyfarth.com | Counsel for *Defendants* |
| Tory Robinson toryrobinson445@yahoo.com | *Co-Plaintiff, Pro se* |

---

*/s/ Marcus T. Sheffield*

**Plaintiff**, *Pro Se*