**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SHEFFIELD and ROBINSON, | § | |
| Plaintiffs, | § | |
| v. | § | SA:25-CV-1442-XR (HJB) |
| TYSON FOODS, INC., et al., | § | |
| Defendants. | § | |

---

**PLAINTIFFS' OPPOSED MOTION TO COMPEL PRODUCTION**

**OF DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION #2 AND**

**MOTION FOR LEAVE TO LIFT STAY FOR LIMITED PURPOSES**

---

**TO THE HONORABLE MAGISTRATE JUDGE HENRY J. BEMPORAD:**

Plaintiffs Marcus Sheffield and Tory Robinson ("Plaintiffs"), proceeding *pro se*, respectfully file this Opposed Motion to Compel Defendants Tyson Foods, Inc., Tyson Farms, Inc., and Hillshire Brands Company ("Defendant" or "Tyson") to produce documents improperly withheld in response to Plaintiffs' Requests for Production (RFP) #2, and move for a limited exception to the current discovery stay. In support of this Motion, Plaintiffs state as follows:

**I. PROCEDURAL BACKGROUND**

1. On March 18, 2026, Defendants served their **Rule 26(a)(1)** *Initial Disclosures* upon Plaintiffs. Within these disclosures, Defendants voluntarily produced paper "Certificates of Bin Cleaning and Inspection" bearing Bates Nos. 265–283.

1

2. Because these certificates are already officially filed on the Court's docket as Exhibit B to Plaintiffs' Emergency Omnibus Motion **(Dkt. 64-2)**, they are incorporated by reference herein and not attached as a separate exhibit to conserve judicial resources.

3. On March 28, 2026, Plaintiffs served their Requests for Production #2 (*RFP #2*) on Defendants. *RFP #2* specifically targeted the operational metadata, digital Excel tracking logs, daily production logs, and confined space/hot work permits strictly limited to the exact dates surrounding the "Certificates of Bin Cleaning and Inspection" produced by Defendants.

4. On April 27, 2026, Defendants served their Responses to *RFP #2* (**Attached hereto as Exhibit A**). Defendants asserted blanket objections of relevance, overbreadth, and proportionality to *Requests Nos. 3 through 10*, explicitly stating: *"Accordingly, Defendants will not produce documents in response to this Request."*

---

## II. ARGUMENT & AUTHORITIES

**A. Defendants' Blanket Objections Violate FRCP 34, and Defendants "Opened the Door" Under FRCP 26(b)(1)** Defendants' primary objection is that the operational logs of the Gonzales Feed Mill are "not relevant to any claim or defense and is not proportional to the needs of the case." These boilerplate assertions explicitly violate **Fed R. Civ P. 34(b)(2)(B)** and **(C)**, which strictly prohibit blanket objections and require a party to state with specificity the grounds for objecting and to explicitly state whether any responsive materials are being withheld on the basis of that objection. Defendants flatly refused to produce anything, relying on legally impermissible boilerplate language.

Furthermore, Defendants' relevance objection contradicts the evidentiary record. Defendant Tyson *opened the door* to this exact discovery on March 18, 2026. In their Initial Disclosures, Defendants voluntarily injected the 19 pages of "Certifications of Bin Cleaning and Inspection" **(Dkt. 64-2)** into the record to defend against Plaintiffs' Food Safety Modernization Act (FSMA) and retaliation claims. Under **FRCP 26(b)(1)**, discovery is permitted regarding any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Defendant cannot introduce paper safety certifications into litigation as a shield while simultaneously using blanket objections to withhold the underlying digital tracking data (metadata, Excel logs, and production records) required to verify their authenticity. Additionally, Defendants cannot claim this request is vague or overly broad. During the telephonic meet-and-confer, Plaintiff Sheffield explicitly detailed the exact operational sequence targeted by *RFP #2*—explaining that for these bin cleanings to occur, the receiving operator must cut incoming flow and the mill operator must batch it out, creating a distinct digital footprint that would objectively prove or disprove the sworn testimony of eyewitness Justin Sepulveda. Defense counsel Dena Moghtader acknowledged this highly specific operational explanation but summarily refused to amend the responses, flatly stating: *"we're going to stick with our objections generally."* Shielding evidence behind boilerplate objections after receiving a granular, operational justification is a bad-faith subversion of the discovery process. Plaintiffs possess sworn testimony from Justin Sepulveda, a Maintenance Generalist employed at the Gonzales facility from September 6, 2021, until December 8, 2025. This testimony is formally filed on the Court's docket as the Third Affidavit of Justin Sepulveda **(Dkt. 64-1).** Mr. Sepulveda swore under penalty of perjury that the bin cleanings depicted in Tyson's paper certifications are an operational and engineering impossibility without massive disruption to the

standard production cycle, requiring full Lock-Out/Tag-Out (LOTO) protocols, atmospheric testing, and confined space preparations. Plaintiffs' *RFP #2* (*Requests 3–10*) are meticulously tailored to request the underlying digital Excel spreadsheets, batch tickets, and Confined Space/Hot Work permits exclusively for the specific dates Defendants claim these cleanings occurred. The metadata requested is precisely tailored to verify or impeach the records Defendants themselves introduced.

**B. The Information is Highly Relevant to Pretext and the "Shadow Code"** Proving that Tyson management manufactured these safety logs is central to Plaintiffs' RICO and retaliation claims. By establishing the existence of this "Shadow Code" (the systemic falsification of federal safety records to prioritize production throughput), Plaintiffs prove the retaliatory animus behind their terminations.

The "Shadow Code" is not a speculative theory; it is a documented corporate mandate. In his formal resignation letter, Senior Maintenance Training Supervisor Michael Tinkham explicitly confessed that his role at the facility was merely ***"to make the required OSHA regulations look like they are being followed"*** rather than actually enforcing them. The requested metadata and tracking logs in *RFP #2* are the objective proofs required to evaluate the veracity of the produced certifications and expose this systemic scheme.

**C. Pattern of Discovery Fraud, Sanctionable Offenses, and Violations of Local Rule CV-26(e) Demands Court Intervention** The Court must compel this production because Defendants and their counsel are actively engaging in bad-faith discovery practices, intentionally misrepresenting the evidentiary record, concealing evidence, and fabricating compliance with Local Rules.

4

**1. Concealment and Contradiction of Video Evidence** Defendants' formal discovery responses actively conceal or contradict the video evidence they previously cited to justify disciplinary actions against both Plaintiffs:

> ***a.*** *The Robinson "Phantom Video":* Defendant Tyson terminated Plaintiff Tory Robinson citing "definitive video evidence" as the absolute basis for his retaliatory discharge. However, when Plaintiffs requested this specific footage in *RFP #1*, Defendants formally responded on April 27, 2026 (**Attached hereto as Exhibit B**, Response to Request No. 5), that *no such video footage exists in their custody, possession, or control*.
>
> ***b.*** *The Sepulveda Suspension Video:* Defendant Tyson justified the October 29, 2024, disciplinary suspension of Plaintiff Sheffield by relying on a video secretly recorded by a subordinate employee, Justin Sepulveda. In his recent deposition, Mr. Sepulveda testified under oath that he took this video and that it was utilized by management to effectuate the discipline. Yet, in response to *RFP #1*, Request No. 5—which explicitly demanded all video recordings regarding disciplinary actions for *both* Plaintiffs—Defendants responded that they possess none.

Notably, Plaintiffs are currently in physical possession of the video recorded by Mr. Sepulveda. Furthermore, Plaintiffs possess an October 31, 2024 email from Tyson Area Safety Manager Trevor Whittington explicitly confirming: *"There is a video available... I will save it to my computer and you will probably need to get a copy of it by flash drive."* (**Attached hereto as Exhibit C**). This definitively proves the video was in Tyson's custody and control, and that Defendants are either actively concealing evidence in bad faith or have spoliated it.

**2. Documented Defiance of Court Orders and Admonishments** Defendants have established a severe, documented pattern of defying this Court's authority across both District and Magistrate

5

dockets. First, Defendants willfully ignored District Judge Rodriguez's January 6, 2026, Order requiring Magistrate jurisdiction elections, remaining in default for **75 days**. Second, Defendants actively defied this Court's explicit admonishments by conducting a hostile deposition prior to mediation. During the April 14, 2026 Status Conference, Magistrate Judge Bemporad specifically urged the parties not to issue subpoenas or conduct discovery prior to the mediation conference. In direct contravention of this instruction, defense counsel issued a subpoena and forced the video deposition of Justin Sepulveda on May 20, 2026. During this deposition, Mr. Sepulveda withstood intense direct examination by defense counsel and doubled down, under oath, on the facts in his sworn affidavits—reaffirming that the bin cleanings depicted in Tyson's paper certifications are fabricated. Defendants know full well their paper certifications have been impeached under oath, yet they continue to use blanket objections in *RFP #2* to conceal the objective operational metadata that would definitively resolve the dispute.

**3. Sanctionable Strategy of Discovery Fraud in RFA #2** Defendants' blanket objections to *RFP #2* are part of a broader, sanctionable strategy of discovery fraud explicitly demonstrated in their perjurious responses to Plaintiffs' Requests for Admission (RFA) #2 (**Attached hereto as Exhibit D**). Under **FRCP 37(c)(2)** and **FRCP 26(g)**, submitting evasive or false denials during discovery is a sanctionable offense. In *RFA #2*, Defendants executed a coordinated campaign of bad-faith denials that are objectively disproven by multi-state witness declarations:

> *a. The PSIF Chemical Leak Letter (RFA #2, No. 31):* Plaintiffs requested Defendants admit the authenticity of the February 11, 2024, "Near Miss - PSIF Incident" letter regarding the flesh-eating chemical leak in Missouri. Defendants evasively admitted the title but stated "otherwise denied." This is a sanctionable misrepresentation. **The Unsworn Declaration of Richard Wood (Attached hereto as Exhibit E)** formally

authenticates this exact document, confirming it accurately reflects the communications raised to management. Mr. Wood further corroborates the cover-up at the St. Joseph facility, proving Defendants' denial of this document is a bad-faith fabrication.

*b. The Tinkham Resignation Letter (RFA #2, Nos. 32-33):* Plaintiffs requested Defendants admit the authenticity of Senior Supervisor Michael Tinkham's resignation letter, which explicitly reports the practice of 'pencil whipping' records. Defendants again gave a sanctionable "otherwise denied" response to the contents of their own corporate record.

*c. Corn Bins as Confined Spaces (RFA #2, No. 15):* Defendants flatly denied that the Corn Bins and receiving pits are Permit-Required Confined Spaces under **29 CFR 1910.146**, a physical impossibility that directly contradicts Justin Sepulveda's sworn testimony and OSHA standards.

*d. The "Shadow Code" Enterprise (RFA #2, No. 17):* Defendants flatly denied the existence of the "Shadow Code." However, this denial is objectively proven false by a mountain of sworn testimony spanning multiple facilities. In addition to **the Unsworn Declaration of Damian Traylor (Attached hereto as Exhibit F)—who is currently employed by Tyson Foods at the Dallas facility**—the formally filed **Affidavits of Plaintiffs Marcus Sheffield and Tory Robinson (attached to the First Amended Complaint, Dkt. 16)**, the **Affidavits of Justin Sepulveda (Dkts. 40-1, 63-1, and 64-1)**, and the **Unsworn Declaration of Richard Wood (Exhibit E)** all explicitly attest under penalty of perjury to the existence and enforcement of this "Shadow Code." Collectively, this sworn testimony proves the "Shadow Code" is not a fabrication, but a multi-state racketeering enterprise.

Defendants are weaponizing fraudulent RFA denials to dispute established facts, while simultaneously utilizing blanket boilerplate objections in *RFP #2* as a tactical shield to hide the underlying metadata that proves those facts.

**4. Fabrication of Conferral Certifications by Defense Counsel** This bad-faith conduct extends directly to Defendants' counsel, who have established a pattern of making explicit, sanctionable misrepresentations to this Court regarding local conferral requirements. Specifically:

> *a. False Certification on April 29, 2026:* In Defendants' Opposed Request To Preclude Plaintiffs From Filing Additional Motions Before The Settlement Conference (**Dkt. 76**, pg. 3), defense counsel Dena Moghtader falsely certified to the Court that she conferred with *both* Plaintiffs and that both were opposed to the request. In reality, she never conferred with Plaintiff Robinson.

> *b. False Certification on June 3, 2026:* In Defendants' Opposed Motion for Leave to File a Surreply (**Dkt. 80**, pg. 4), lead counsel Linda Schoonmaker committed the exact same misrepresentation, falsely certifying that she conferred with *both* pro se Plaintiffs and that both were opposed. She, too, completely failed to confer with Plaintiff Robinson.

**Attached hereto as Exhibit G** are the email communications definitively proving that defense counsel only communicated with Plaintiff Sheffield and entirely fabricated their certifications of conference regarding Plaintiff Robinson.

Defendants' actions explicitly violate Western District of Texas Local Rule CV-26(e), which dictates that discovery should not be conducted for an improper purpose, such as to harass, intimidate, or unduly burden another party. Because Defendants and their counsel are actively misleading the Court regarding conferrals, defying the Court's admonishments regarding subpoenas, fabricating the existence of video evidence for terminations, and committing

sanctionable offenses by submitting false RFA denials to conceal a multi-state retaliatory enterprise, the Court cannot take Defendants' blanket objections to *RFP #2* at face value.

---

**III. MOTION FOR LEAVE TO LIFT STAY FOR LIMITED PURPOSES** On April 15, 2026, this Court stayed all deadlines and responses to pending motions pending the outcome of the parties' settlement conference **(Dkt. 73).** However, a limited exception to this stay is urgently required. **Pursuant to Fed. R. Civ. P. 16(b)(4), a scheduling order or discovery stay may be modified for "good cause." Plaintiffs establish good cause for a limited exception because Defendants are actively exploiting the current stay to eradicate material evidence.**

**A. The Origins and Weaponization of the Current Stay** The Court must note the origins of this stay. As Plaintiffs formally clarified to the Court in their Advisory Notice Regarding Status Conference **(Dkt. 61)**, this settlement conference was not initiated by Plaintiffs. It was Defense counsel who initiated the push for mediation, originally soliciting Plaintiffs via email to agree to an *unopposed* request for a settlement conference, which Defendants then unilaterally drafted and filed as a Joint Request for a Settlement Conference **(Dkt. 53)**. Defendants engineered the very settlement conference that triggered this discovery stay, and they are now actively weaponizing their own requested stay to conceal records and run out the clock on perishable physical evidence before the recently rescheduled August 24, 2026 mediation conference.

**B. The Two-Phase Spoliation Strategy** In the Fifth Circuit, the duty to preserve arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010). A response to this motion and an expedited hearing on the pending Renewed Motion for Preservation Order **(Dkt. 68)** are absolutely critical because the risk of

evidence destruction is not speculative; it is an active, two-phase operation by Defendants. Defendants are exploiting this mediation stay as a defensive screen to alter physical realities and purge digital records.

> *Phase 1: Physical Spoliation.* Immediately following the initial hearing on February 24, 2026, Plaintiffs received reports that Defendants deployed corporate "remediation" teams to conduct "secret cleanings" at the Gonzales and Dallas facilities, effectively sanitizing the physical crime scenes. This physical spoliation recently escalated into a frantic cover-up operation. Plaintiffs received reports that starting on May 19, 2026—the exact day before Justin Sepulveda's hostile deposition—Defendants abruptly emptied all of the corn bins and spent the remainder of the weekend conducting non-routine "inspections" and "certifications." Every employee that Plaintiffs received reports from stated that, Gonzales Mill staff **had never seen** this happen before in their entire careers.

> *Phase 2: Digital Spoliation.* Having altered the physical plant, Defendants are now using the current discovery stay to run out the clock on highly perishable digital evidence—including the metadata requested in *RFP #2*, internal Slack/Teams messages, and surveillance video overwrites. Plaintiffs' warning of an impending July 1, 2026, corporate IT data migration is not speculative; it directly coincides with Tyson's publicly announced July 1 corporate transition phase for retiring CEO Donnie King, an event that routinely triggers sweeping data retention resets and the purging of electronic metadata. If the Court waits until the August 24, 2026 mediation to address preservation, this IT migration will permanently purge the exact electronic metadata that proves the physical cleanings never happened historically.

**C. The "Trail of Bodies," Executive Flight, and Eradication of Human Evidence** This two-phase physical and digital spoliation is being executed concurrently with a systematic purge of material witnesses. Tyson has left a "trail of bodies" across multiple facilities, summarily firing, targeting, or forcing the resignations of the exact individuals who possessed direct knowledge of the "Shadow Code" and safety hazards. This systematic purge includes Plaintiff Marcus Sheffield, Plaintiff Tory Robinson, Justin Sepulveda, Michael Tinkham, Daniel Escamilla, Joe Ybarbo, Wilmer "Bill" Hoisington, Tessa James, Benton Lewis (a 40-year veteran of the Gonzales feed mill), and notably, Richard Wood. Mr. Wood was a pristine supervisor who was terminated from the St. Joseph, MO facility on January 16, 2026—**exactly 10 days** after the February 11, 2024 PSIF safety letter regarding a flesh-eating chemical leak he co-signed was formally filed in federal court within the First Amended Complaint **(Dkt. 16).**

**D. The Chilling Effect and the Silenced Network of Active Whistleblowers:** This multi-state purge has created an ongoing, real-time intimidation threat. Plaintiffs are currently receiving critical information from a clandestine network of active team member whistleblowers spanning the Dallas, TX, Gonzales, TX, St. Joseph, MO and Humboldt, TN facilities. However, these current employees are absolutely terrified to formally cooperate without the protection of a federal subpoena. Because everyone "inside the walls" is watching this case, these active informants are paralyzed by the threat of imminent financial ruin. They have watched the Enterprise systematically hunt down and fire anyone who speaks out—merely for confidentially cooperating and providing truthful declarations. By maintaining this discovery stay, Defendants are successfully keeping this active network of witnesses frozen in fear, effectively running out the clock on their potential testimony.

Moreover, Defendants are actively attempting to "wall off" the testimony of other key material witnesses by exerting ongoing legal control over them. Specifically, former Dallas Senior Production Manager Fred Woods and former Nurse Manager Cecilia Perez have both been terminated and separated from the company, yet they are curiously currently represented by Tyson Foods' own legal counsel. This manufactured "controlled witness" strategy is explicitly designed to block Plaintiffs from accessing their critical, inside-the-room knowledge regarding the suppression of workplace injuries.

Finally, this purge extends to the very top of the Enterprise through orchestrated "executive flight." On May 28, 2026—**a mere eight days** after Justin Sepulveda's devastating deposition exposing the fraud—Tyson abruptly announced the forced retirement of CEO Donnie King. While not a whistleblower, he is a named Defendant in this case, and his sudden departure is the intentional catalyst designed to execute the sweeping July 1 IT migrations and data retention resets before this Court can act to halt the destruction of the metadata logs.

Because Defendants are actively eradicating human evidence, walling off separated witnesses, and terrorizing the remaining active whistleblowers into silence across four facilities, the objective, unalterable digital metadata requested in *RFP #2* is now the *only* safe and reliable evidence left to prove the systemic falsification of federal safety records. If the Court does not intervene to lift the stay and compel the metadata now, Defendants will have successfully destroyed both the witnesses and the paper trail before mediation even begins.

**E. The Limited Exceptions Requested** To ensure the integrity of the evidentiary record and to guarantee that the impending mediation is based on factual reality rather than concealed fraud and spoliated evidence, Plaintiffs formally request leave to lift the stay for the following three limited purposes:

1.  To Order Defendants to file their substantive Response to this Motion to Compel *(RFP #2)* within seven (7) days.

2.  To Order Defendants to file their substantive Response to Plaintiffs' previously filed Renewed Motion for Preservation Order **(Dkt. 68)** within seven (7) days.

3.  To set an Expedited Evidentiary Hearing to determine the merits of both this Motion to Compel and the Renewed Motion for Preservation Order. Plaintiffs request that this hearing take place at least twenty-one (21) days prior to the August 24, 2026 mediation conference.

---

**IV. CONCLUSION** On June 6, 2026, Plaintiff Sheffield communicated a profound ethical and moral conflict directly to Donna McElroy regarding the upcoming mediation. In that correspondence, Plaintiff Sheffield explicitly stated that his conscience will not allow him to sit at a negotiating table without knowing the truth of whether there is an active, ongoing threat to the American consumer food supply. He emphasized that he cannot, in good faith, move forward with a settlement conference under a "veil of silence" orchestrated by Defendants. Consequently, Plaintiff made it clear that he would file this specific Motion to Compel and seek leave to bypass the stay, formally warning that if he cannot secure an evidentiary hearing for these critical documents prior to mediation, he will be forced to contemplate his withdrawal from the settlement proceedings entirely rather than remain complicit in the concealment of these public hazards.

Ultimately, the justification for this combined Motion rests on the urgent need to halt the permanent destruction of the evidentiary record. Defendants are actively weaponizing the Court's mediation stay as a defensive shield to orchestrate a massive spoliation campaign: physically

sanitizing the facilities, executing a nationwide "Witness Purge" to silence terrified whistleblowers, and running out the clock until a July 1 corporate IT data migration permanently purges the electronic metadata requested in *RFP #2*. Because Tyson is actively eradicating the human evidence, the objective, unalterable digital metadata currently hidden behind Defendants' blanket objections is the only reliable proof remaining of the "Shadow Code." The Court must intervene, lift the stay for this limited purpose, and compel the production of this data; otherwise, Defendants will successfully destroy the evidence before the parties ever reach the negotiating table.

---

**V. PRAYER FOR RELIEF** WHEREFORE, Plaintiffs respectfully request that the Court:

1. **GRANT** Plaintiffs' Motion for Leave to Lift the Stay for the limited purposes of requiring responses and setting a hearing prior to mediation;

2. **ORDER** Defendants to respond to this Motion and Plaintiffs' Renewed Motion for Preservation Order (Dkt. 68) within seven (7) days;

3. **SCHEDULE** an expedited hearing on these discovery and preservation matters at least twenty-one (21) days prior to the August 24, 2026 mediation;

4. **OVERRULE** Defendants' blanket, boilerplate objections to Plaintiffs' Requests for Production #2, *Nos. 3 through 10* as violative of FRCP 34(b)(2);

5. **FIND** that Defendants have legally WAIVED their objections to Plaintiffs' Requests for Production #2, Nos. 3 through 10, because Defendants relied exclusively on boilerplate, blanket objections in direct violation of the specificity requirements of FRCP 34(b)(2)(B) and (C);

6. **COMPEL** Defendant Tyson Foods, Inc. to produce all responsive documents, including native Excel files with metadata and operational logs, within five (5) days of the Court's Order;

7. **ORDER** Defendants, pursuant to FRCP 37(a)(5), to pay Plaintiffs' reasonable expenses incurred in making this Motion to Compel, including, but not limited to, PACER fees, certified mail costs, and printing expenses, necessitated by Defendants' legally impermissible blanket objections to RFP #2;

8. **ISSUE a formal Anti-Spoliation Warning to Defendants, notifying them that any further physical alteration of the Gonzales Feed Mill or purging of digital metadata prior to the Court's hearing will result in an adverse-inference jury instruction or default judgment; and**

9. **GRANT** such other and further relief as the Court deems just and proper.

---

**DATED:** June 22, 2026

---

Respectfully Submitted,

*/s/ Marcus Sheffield*                                           */s/ Tory Robinson (with permission)*

**Marcus T. Sheffield,** Plaintiff *Pro Se*                **Tory Robinson,** Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

We hereby certify that on this 22nd day of June 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system; and a true and correct copy was sent via email to Defendants' counsel of record, **Linda Schoonmaker,** at [lschoonmaker@seyfarth.com](mailto:lschoonmaker@seyfarth.com).

*/s/ Marcus Sheffield*

**Marcus T. Sheffield,** Plaintiff *Pro Se*

*/s/ Tory Robinson (with permission)*

**Tory Robinson,** Plaintiff *Pro Se*

## CERTIFICATE OF CONFERENCE

We hereby certify that on **June 10, 2026**, Plaintiff Sheffield conferred with Defendants Counsel Linda Schoonmaker via email and was advised that Defendants are **OPPOSED**. Furthermore, pursuant to Local Rule CV-7(g), we hereby certify that we have conferred in good faith with defense counsel regarding the discovery disputes in RFP #2. Specifically, we conducted a virtual A/V meet-and-confer with Dena Moghtader on May 1, 2026. During this conferral, Plaintiff Sheffield explicitly explained the operational necessity of the requested metadata to verify the bin cleanings, yet defense counsel advised that Defendants stand by their general objections and refuse to agree to the production of the requested operational logs.

*/s/ Marcus Sheffield*

**Marcus T. Sheffield,** Plaintiff *Pro Se*

*/s/ Tory Robinson (with permission)*

**Tory Robinson,** Plaintiff *Pro Se*

16

## <u>INDEX OF EXHIBITS</u>

1. **EXHIBIT A:** Defendants' Responses to Plaintiffs' Requests for Production #2 (*RFP #2*)

2. **EXHIBIT B:** Defendants' Responses to Plaintiffs' Requests for Production #1 (*RFP #1*)

3. **EXHIBIT C:** October 31, 2024 Email from Tyson Area Safety Manager Trevor Whittington

4. **EXHIBIT D:** Defendants' Responses to Plaintiffs' Requests for Admission #2 (*RFA #2*)

5. **EXHIBIT E:** Unsworn Declaration of Richard Wood

6. **EXHIBIT F:** Unsworn Declaration of Damian Traylor

7. **EXHIBIT G:** Email Communications Demonstrating Failure to Confer with Plaintiff Robinson