**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SHEFFIELD and ROBINSON, | § | |
| Plaintiffs, | § | |
| v. | § | SA:25-CV-1442-XR (HJB) |
| TYSON FOODS, INC., et al., | § | |
| Defendants. | § | |

---

**PLAINTIFFS' OPPOSED MOTION FOR SANCTIONS AND**

**ORDER TO SHOW CAUSE UNDER FED. R. CIV. P. 26(g), 37(c), 37(e), AND 56(h), AND**

**THE COURT'S INHERENT AUTHORITY REGARDING WILLFUL DISCOVERY**

**FRAUD, PERJURY, AND SPOLIATION**

---

**TO THE HONORABLE MAGISTRATE JUDGE HENRY J. BEMPORAD:**

Plaintiffs Marcus Sheffield and Tory Robinson ("Plaintiffs"), proceeding *pro se*, respectfully file

this Opposed Motion for Sanctions and Order to Show Cause against Defendants Tyson Foods,

Inc., Tyson Farms, Inc., Hillshire Brands Company, CEO Donnie King, and the individually

named co-defendants ("Defendants"), as well as their counsel of record, Linda C. Schoonmaker

and Dena Moghtader of Seyfarth Shaw LLP.

This motion seeks immediate evidentiary and monetary sanctions against the Corporate

Defendants, the Individual Defendants, and their legal counsel for a coordinated, multi-front

1

campaign of bad-faith discovery obstruction, evidence concealment, and perjurious certifications designed to perpetrate a fraud upon this Court.

Plaintiffs are willing to **defer the scheduling of any hearing** on the Motion for Sanctions and Order to Show Cause **until after the conclusion of the upcoming settlement conference;** however, Plaintiffs **explicitly DEFER to the Court as to briefings** on this matter, and whether they should be submitted **prior to the conference** (or not) as to ensure the integrity of the record and the mediation process.

## I. INCORPORATION BY REFERENCE AND THE EXISTING RECORD

To conserve judicial resources and strictly comply with WDTX Local Rules regarding duplicative filings, Plaintiffs do not attach redundant exhibits to this Motion, except for those specifically required to demonstrate the fraud herein (Exhibits A and B). Instead, Plaintiffs formally incorporate by reference the exhibits successfully filed alongside Plaintiffs' *Opposed Motion to Compel Production of Documents* (Dkt. 88) and Defendants' own *Response in Opposition to Partial Summary Judgment* (Dkt. 77).

The factual record of Defendants' physical evidence spoliation, the impending corporate IT data purge, and the "Shadow Code" operations detailed in Dkt. 88 provide the underlying motive for the pattern of bad-faith conduct and sanctions requested herein.

## II. LEGAL STANDARDS FOR SANCTIONS AGAINST COUNSEL AND CLIENT

A. **Fed. R. Civ. P. 26(g)(1)** requires every discovery response to be signed by at least one attorney of record, certifying that the response was formed after a "reasonable inquiry" and is not "interposed for any improper purpose, such as to harass, cause unnecessary

delay, or needlessly increase the cost of litigation". If a certification violates this rule, the Court *must* impose an appropriate sanction on the signer, the party, or both.

B. **Fed. R. Civ. P. 37(c)(2)** mandates that if a party fails to admit what is requested under Rule 36 and the requesting party later proves the document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses incurred in making that proof.

C. **Fed. R. Civ. P. 37(e)(2)** provides that if electronically stored information (ESI), such as digital video, that should have been preserved is lost because a party failed to take reasonable steps to preserve it, and the court finds that the party acted with the intent to deprive another party of the information's use in the litigation, the court may presume that the lost information was unfavorable to the party, or strike defenses and enter an order of preclusion.

D. **Fed. R. Civ. P. 56(h)** dictates that if the Court determines that a declaration or exhibit under this rule is submitted in bad faith or solely for delay, the Court may order the submitting party to pay the reasonable expenses incurred as a result, and may hold the offending attorney in contempt.

E. **Inapplicability of Rule 11 "Safe Harbor":** Plaintiffs note that under Fed. R. Civ. P. 11(d), discovery-related motions governed by Rules 26 and 37 are explicitly exempt from Rule 11's 21-day "safe harbor" requirement. Nevertheless, as demonstrated below, Plaintiffs provided Defendants with an equivalent safe harbor period to cure their fraudulent responses, which Defendants willfully ignored.

F. **The Court's Inherent Authority:** Federal courts possess the inherent power to impose sanctions against a party or counsel who has acted in bad faith, vexatiously, or who has

3

perpetrated a fraud upon the Court. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). This includes the authority to sanction a party for the intentional spoliation of physical evidence, such as deploying "remediation teams" to alter a physical facility to conceal regulatory violations after the duty to preserve has triggered.

---

## III. THE SCHEME OF PERJURY AND CONCEALMENT

**A. Willful Obstruction and Prior Warning (The April 28th Emails)** Defendants and their counsel cannot claim that the discovery violations outlined below are the result of oversight or a good-faith misunderstanding. On April 28, 2026, Plaintiffs sent a detailed, formal Rule 37 conferral email to Defense Counsel explicitly identifying the fraudulent denials, evasive tactics, and spoliation of video evidence in their RFA and RFP responses. Plaintiffs formally warned Defense Counsel of the Rule 26(g) and Rule 37 implications and provided a "safe harbor" deadline of May 6, 2026, to amend the responses (**Attached hereto as Exhibit A**, April 28 Rule 37 Emails).

Defense Counsel willfully ignored this warning, refused to amend the responses, and explicitly chose to maintain their fraudulent posture on behalf of all Defendants. This proves their conduct is a calculated, bad-faith strategy of obstruction.

**B. The "Phantom Video" Spoliation & Perjury (RFP #1)** Defendants have established a pattern of citing "video evidence" to terminate whistleblowers, only to claim that video does not exist when demanded in federal discovery.

1.  *The Robinson Dallas Video:* Defendant Tyson terminated Plaintiff Robinson on October 10, 2025, claiming he was "seen on camera" to justify his retaliatory discharge (**Attached hereto as Exhibit B**, Disciplinary Action Notification).

2.  *The Sheffield Gonzales Video:* Defendant Tyson suspended Plaintiff Sheffield (**Dkt. 16, pg. 97**) based on a video recorded by Justin Sepulveda. Plaintiffs possess the official investigative report from Tyson Area Safety Manager Trevor Whittington, which explicitly documents that Justin Sepulveda "went behind the wall to sneak up and record a video" of the incident. Whittington formally recommended disciplinary action against Sepulveda for a "Cell Phone Policy Violation – Using cell phone to record unauthorized video" and previously confirmed via email, "There is a video available... I will save it to my computer." (**Dkt. 88-3**).

Consequently, in RFP #1, Request No. 5, Plaintiffs explicitly demanded all video recordings of all incidents regarding disciplinary actions for both Plaintiffs at all Tyson locations. On April 27, 2026, Defense Counsel signed formal discovery responses stating: *"none in Defendants' possession, custody, or control."* (**Dkt. 88-2**). Furthermore, during the meet-and-confer, Defense Counsel Dena Moghtader doubled down on this certification, stating on the record: *"There's no video footage. Period. That's Tyson's position."* However, rather than amend the fraudulent denial by the Safe Harbor deadline, Defense Counsel subsequently notified Plaintiffs they were going to *"stick with our objections generally,"* affirmatively shielding the deleted footage. This certification is a direct, sanctionable misrepresentation. Because Tyson's own safety manager confirmed in writing that the Sheffield video was saved to a corporate hard drive, and Tyson's HR explicitly relied on camera footage to terminate Robinson, Defense Counsel's Rule 26(g) certification that no video is in their custody or control means Defendants have either

intentionally concealed the evidence from Plaintiffs, or unlawfully destroyed the hard drives. Both scenarios warrant severe sanctions.

**C. Failure to Conduct a Reasonable Inquiry (RFA #2)** Rule 26(g) explicitly requires an attorney to conduct a "reasonable inquiry" before certifying a discovery response. In RFA #2, Nos. 35 and 36, Plaintiffs requested admissions regarding communications between Plaintiff Sheffield and Tyson Manager Michael Hays. Defense Counsel signed the response stating that they "cannot admit or deny" the contents of those communications (**Dkt. 88-4**).

This is a textbook Rule 26(g) violation. These communications occurred on Tyson-issued corporate email accounts and reside entirely on Defendant Tyson's own corporate servers. Claiming an inability to admit or deny the contents of internal emails that Defendants possess absolute custodial access to proves that Defense Counsel intentionally failed to conduct the required reasonable inquiry, opting instead for bad-faith evasion.

Furthermore, Defendants' response (*"Defendants cannot admit or deny this Request, as such, denied"*) is a fatal procedural defect under **Fed. R. Civ. P. 36(a)(4)**. The Rule explicitly prohibits a party from asserting a lack of knowledge unless they formally certify within the response that they made a "reasonable inquiry" and the information known or readily obtainable is insufficient. Defendants' failure to include this mandatory statutory language is a *per se* violation of the Federal Rules, rendering the denial invalid.

**D. Sanctionable Denials of Public Records and Established Facts (RFA #2 & RFA #1)**

Despite being formally warned on April 28, Defendants and Defense Counsel weaponized the discovery process by submitting blatantly false denials to dispute established facts and public records:

1. **Denying State Agency Rulings (RFA #2, Nos. 47 & 48):** Plaintiffs requested Defendants admit that Exhibit G and Exhibit M were true and correct copies of the Texas Workforce Commission (TWC) rulings regarding Plaintiff Sheffield's terminations. Defendants answered *"Denied."* (**Dkt. 88-4**). Denying the authenticity of a government agency's official public ruling in federal discovery is a severe Rule 26(g) violation.

2. **The Stefon Moore Investigation (RFA #2, No. 19):** Plaintiffs requested Defendants admit the authenticity of the investigation records and facility map concerning the Stefon Moore CDL near-miss incident. Defendants answered *"Denied."* Denying the authenticity of their own internal facility incident maps—already on the record at **Dkt. 16, pgs. 90-93**—is an indefensible discovery violation designed to conceal Tyson's disparate disciplinary treatment of whistleblowers.

3. **The PSIF Chemical Leak Letter (RFA #2, No. 31):** Defendants evasively denied the authenticity of the February 11, 2024, "Near Miss - PSIF Incident" letter (**Dkt. 88-4**). Plaintiffs were forced to expend resources tracking down Richard Wood, a pristine former supervisor, who provided an Unsworn Declaration formally authenticating this exact document (**Dkt. 88-5**).

4. **The Tinkham Resignation Letter (RFA #2, Nos. 32-33):** Defendants provided an evasive "otherwise denied" response to the contents of Senior Supervisor Michael Tinkham's formal resignation letter, which explicitly confesses to the corporate practice of 'pencil whipping' records (**Dkt. 88-4**).

5. **The Corn Bin Cleanings (RFA #2, Nos. 15 & 16):** Defendants denied that the cleaning of the receiving pits and Corn Bins 101 through 104 "is not a standard, recurring sanitation task" (**Dkt. 88-4**). This false denial of the facility's operational reality was

7

completely dismantled by Justin Sepulveda's sworn testimony, wherein he confirmed the bins were never emptied for housekeeping during his entire four-year tenure.

6. **The ERISA Document Request (RFA #1, Nos. 4-6):** In RFA #1, Defendants flatly denied receiving Plaintiff's request for Plan documents and denied failing to provide them (**Dkt. 69-3**). This is objectively false, as Plaintiffs possess the USPS Certified Mail Return Receipt ("Green Card") signed by Defendants' agent, already established on the record at **Dkt. 16, pg. 159**, and Defendants have never produced the demanded documents.

7. **The Whittington Audit Contradiction (RFA #2, No. 26):** Defendants flatly denied the authenticity of the Whittington Machine Guarding Audit records. However, in Defendants' own Answer to the First Amended Complaint (Dkt. 40, ¶ 56), Defense Counsel explicitly stated: *"Defendants admit that Defendant Whittington conducted a Machine Guarding Audit."* Denying the authenticity of the exact safety audit they already admitted to conducting in their responsive pleadings is a bad-faith tactic designed solely to multiply litigation costs.

8. **The Disciplinary Override Contradictions (RFA #2, Nos. 22):** Plaintiffs requested Defendants admit that Plaintiff Sheffield's disciplinary recommendation for driver Stefon Moore was overridden by Safety Manager Trevor Whittington. Defendants flatly answered *"Denied."* However, Plaintiffs possess the exact email chain from October 23, 2024, wherein Whittington explicitly intervenes to block the discipline, stating: *"I don't believe a disciplinary action is warranted. There is no video to prove and there is no neutral witness..."* (**Dkt. 16, pg. 89; Exhibit A36**). Denying a fact explicitly proven by their own Safety Manager's written directive is a blatant Rule 26(g) violation.

9. **The "Shadow Code" Perjury (RFA #2, No. 17):** Plaintiffs requested Defendants admit that the "Shadow Code" refers to *"informal expectations imposed by management that employees were expected to follow even when those expectations conflicted with written company policies, safety requirements, or regulatory compliance."* Defendants answered *"Denied."* However, this denial is objectively proven false by a mountain of sworn testimony spanning multiple facilities. The Unsworn Declaration of Damian Traylor (**Dkt. 88-6**) (currently employed by Tyson Foods), the formally filed Affidavits of Plaintiffs Marcus Sheffield and Tory Robinson (**Dkt. 16**), the Affidavits of Justin Sepulveda (**Dkts. 40-1, 63-1, and 64-1**), and the Unsworn Declaration of pristine supervisor Richard Wood (**Dkt. 88-5**) all explicitly attest under penalty of perjury to the existence and enforcement of this "Shadow Code." Denying the existence of a multi-state racketeering enterprise that is corroborated by multiple sworn witnesses constitutes an egregious Rule 26(g) violation.

10. **Evasive Denials of Internal Policies, Signatures, and Records (RFA #2, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 18, 20, 21, 23, 24, 25, 27, 28, 29, 30, 38, 46):** When requested to admit the authenticity of Defendants' own internal corporate safety policies, internal emails, Disciplinary Action Notifications (including the unapproved DAN in No. 23), Tyson Employee Expense Details (No. 46), and even Plaintiff Sheffield's own signed training acknowledgments (No. 7), Defense Counsel repeatedly deployed the evasive boilerplate formulation: *"Admit that the page referenced... is titled [X], otherwise denied."* Because Defendants possess absolute custodial access to their own HR and financial servers to verify these records, this is a direct, bad-faith violation of Rule 36(a)(4).

11. **Denying Their Own Client's Text Messages (RFA #2, Nos. 37, 39 & 40):** Plaintiffs requested Defendants admit the authenticity of text messages between Plaintiff Sheffield and Defendant Mill Manager Brian Engelhardt. Defendants flatly answered *"Denied,"* affirmatively asserting the communications are fake. Because Defense Counsel represents Mr. Engelhardt, their failure to consult their own client to verify his texts proves a willful failure to conduct a reasonable inquiry under Rule 26(g).

**E. The Sepulveda Deposition: Confessions on the Record** Defendants' fraudulent denials regarding the "Shadow Code" and their manufactured disciplinary investigations were entirely eviscerated during the May 20, 2026, hostile video deposition of former Maintenance Generalist Justin Sepulveda. While Plaintiffs proceeding *in forma pauperis* currently lack the financial resources to purchase the expedited written transcript of this deposition, Plaintiffs possess the audio recording of the proceeding. **Plaintiffs hereby notify the Court that they are prepared to submit the digital audio recording of the deposition directly to the Court for in camera review to conclusively bypass any evidentiary objections regarding the lack of a written transcript.** Furthermore, Defense Counsel was physically present to hear their own subpoenaed witness provide devastating testimony under oath that exposes Tyson's defense as a fabrication:

1. **Proof of the Illegal Directive:** Under oath, Mr. Sepulveda corroborated Plaintiffs' claims regarding Brian Engelhardt's illegal safety override. Referring to the mandatory training tests, Sepulveda explicitly testified: *"Mr. Engelhardt told us that we didn't have to... it was just more important things to be done and that he assured us that we wouldn't be fired or disciplinary action wouldn't be taken for us not doing those tests."*

10

2. **Proof of the "Shadow Code" Pencil Whipping:** Under oath, Mr. Sepulveda confessed to the exact mechanics of the regulatory fraud, testifying that management routinely handed him multiple months of training papers *"to sign right then and there without training"* or left them in the break room to be filled out. He further confirmed that in his entire 4-year tenure, the corn bins were never emptied for required housekeeping.

3. **Proof of the Manufactured Pretext:** Defendants formally alleged that Plaintiff Sheffield was suspended because he smelled of cannabis. Under oath, Mr. Sepulveda testified that Mill Manager Brian Engelhardt pulled him into the control room, asked if Plaintiff smelled of cannabis, Sepulveda said "No," and Engelhardt explicitly replied: *"he did not smell it either"*. This is sworn proof that Tyson management knowingly manufactured a false safety violation to target a federal whistleblower.

**F. Attorney Bad-Faith and False Declarations (Rule 56(h))** This pattern of submitting false records extends directly to Defendants' dispositive motions. In attempting to defeat Plaintiff Sheffield's Motion for Partial Summary Judgment regarding Count XIII (ERISA), Defense Counsel Dena Moghtader submitted a personal Declaration pursuant to 28 U.S.C. § 1746, swearing under penalty of perjury that "Exhibit D" was a true and correct copy of Plaintiff's Acknowledgment of Receipt for the Summary Plan Description (**Dkt. 77-1; Dkt. 77-4**). However, the 2022 signature utilized in Defendants' Exhibit D originates from a legally severed, prior period of employment at the Haltom City facility. As established by the official EEOC Charge of Discrimination record, Plaintiff Sheffield accepted a new offer of employment as a production supervisor with an official start date of April 25, 2024. In a premeditated effort to conceal this timeline, Defense Counsel evasively denied the authenticity of Plaintiff's 2024 Humboldt, TN Offer Letter during discovery (**RFA #2, No. 34**). For an officer of the Court to

11

suppress a 2024 employment offer in discovery, only to subsequently submit a personal declaration under penalty of perjury utilizing a defunct contract from a legally severed 2022 employment period to excuse a statutory ERISA default, is a blatant attempt to defraud the Court. It is a severe Rule 56(h) violation designed solely to prejudice the Plaintiff and delay summary judgment.

Furthermore, any claim of "clerical error" is eviscerated by Defendants' June 3, 2026 Surreply (Dkt. 80-1), wherein Defense Counsel doubled down on the deception, explicitly arguing to the Court that the defunct 2022 Exhibit D should overrule Plaintiff's 2025 statutory claims.

**G. Weaponizing Rule 26(g) to Conceal Fraud (RFP #2)** When Plaintiffs requested the native Excel tracking logs that would objectively verify whether the highly suspicious "Corn Bin Certifications" were physically possible (RFP #2), Defense Counsel refused to produce the operational logs, audaciously citing Fed. R. Civ. P. 26(g) against Plaintiffs, claiming the request was "harassing and vexatious." Furthermore, when Plaintiffs requested the Dallas facility CCTV video footage that Defendants explicitly relied upon to terminate Plaintiff Robinson (RFP #1), Defense Counsel again invoked Rule 26(g).

Weaponizing a federal sanctions rule to actively shield digital metadata and surveillance footage represents the pinnacle of obstruction. This bad-faith refusal to produce native ESI is a calculated delay tactic designed to stall discovery until Tyson's impending July 1, 2026, corporate IT data migration. This obstruction is in direct defiance of Magistrate Judge Bemporad's explicit warning during the initial motions hearing, wherein the Court noted that Tyson must maintain *"very strict standards for recordkeeping"* and warned that *"if there's some records missing, this may support Mr. Sheffield's arguments... to pretext."* Furthermore, Defendants are concurrently exploiting this discovery stall to deploy "remediation" teams to physically alter and scrub the

12

Gonzales Feed Mill—intentionally spoliating the physical crime scene before Plaintiffs can execute a Rule 34 Site Inspection.

**H. Fabrication of Conferral Certifications by Defense Counsel** The bad-faith conduct of Defense Counsel extends directly to their communications with this Court. On two separate occasions, Defense Counsel submitted pleadings containing explicitly false Certificates of Conference in violation of Local Rule CV-7(g).

1. On April 29, 2026, in Defendants' Opposed Request to Preclude (Dkt. 76), Dena Moghtader falsely certified she conferred with both Plaintiffs, when she entirely failed to confer with Plaintiff Robinson.

2. On June 3, 2026, in Defendants' Opposed Motion for Leave to File a Surreply (Dkt. 80), lead counsel Linda Schoonmaker committed the exact same misrepresentation, falsely certifying to this Court that she conferred with both pro se Plaintiffs, when she also completely excluded Plaintiff Robinson.

Misrepresenting conferrals to an Article III Judge demonstrates a systemic willingness to falsify the record to gain a tactical advantage. Because these procedural motions fall outside the scope of Rule 26(g), Plaintiffs respectfully invoke the Court's Inherent Authority to sanction Defense Counsel for these bad-faith violations of Local Rule CV-7(g).

---

## IV. CONCLUSION AND PRAYER FOR RELIEF

Defendants and their counsel are not engaged in legitimate litigation; they are engaged in a bad-faith war of attrition. By ignoring explicit written warnings, certifying false RFA denials covering state agency rulings and their own investigation maps, failing to conduct reasonable inquiries into their own servers, concealing video evidence, and submitting legally obsolete

13

exhibits to defeat summary judgment, Seyfarth Shaw LLP and Tyson Foods have severely compromised the integrity of the judicial process.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

1. **GRANT** this Motion for Sanctions under Fed. R. Civ. P. 26(g), 37(c), 37(e), 56(h), and the Court's Inherent Authority;

2. **ISSUE AN ORDER TO SHOW CAUSE** compelling Defendants and Defense Counsel (Linda C. Schoonmaker and Dena Moghtader) to explain why they should not be severely sanctioned for their willful discovery fraud;

3. **IMPOSE MONETARY SANCTIONS AGAINST DEFENSE COUNSEL:** Order Defense Counsel (Linda C. Schoonmaker and Dena Moghtader) to personally pay severe monetary sanctions for the following discrete violations:

   A.  **Under FRCP 26(g)(3):** For improperly certifying the fraudulent and evasive denials in RFA #1 and RFA #2, failing to conduct a reasonable inquiry regarding RFA #2 (Nos. 35-36), and falsely certifying the non-possession of video evidence in RFP #1;

   B. **Under FRCP 56(h):** For Dena Moghtader's bad-faith 28 U.S.C. § 1746 submission of Exhibit D (**Dkt. 77-4**); and

   C. **Under the Court's Inherent Authority:** For willfully fabricating Certificates of Conference on Dkts. 76 and 80 in violation of Local Rule CV-7(g).

4. **IMPOSE MONETARY SANCTIONS AGAINST ALL DEFENDANTS:** Order the Corporate Defendants and the Individual Defendants (including, but not limited to, CEO Donnie King, Shannon Jandorf, Brian Engelhardt, Trevor Whittington, Jess Chadick, John "Trent" Pontius, Samantha Speights, Cecilia Perez, Fred Woods and Jessica

Becerra), on whose behalf the fraudulent discovery responses and exhibits were submitted, pursuant to FRCP 37(c)(2), FRCP 26(g)(3), and FRCP 56(h), to be held jointly and severally liable to pay Plaintiffs' reasonable out-of-pocket expenses. This includes, but is not limited to, all costs incurred in tracking down witnesses, securing unsworn declarations (including travel and notary fees), obtaining deposition audio/records, PACER fees, certified mailing and printing costs, and the costs incurred litigating the tainted Summary Judgment record to prove the matters fraudulently denied in RFA #1 and RFA #2;

5. **DEEM ADMITTED** the matters requested in Plaintiffs' RFA #1 (Nos. 4, 5, 6) and RFA #2 (Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 46,  47, and 48) for all purposes in this litigation;

6. **STRIKE DEFENDANTS' EXHIBIT D** (**Dkt. 77-4**) from the summary judgment record pursuant to FRCP 56(h) and FRE 403;

7. **ISSUE A CONDITIONAL ORDER OF PRECLUSION:** Notify Defendants that if the digital disciplinary videos requested in RFP #1 (Request Nos. 2 & 5) have been overwritten, purged, or otherwise destroyed, the Court will exercise its authority under **Fed. R. Civ. P. 37(e)(2)** to strike all defensive claims regarding Plaintiffs' alleged misconduct. Furthermore, Plaintiffs request the Court invoke its Inherent Authority to impose an adverse inference against Defendants regarding the physical conditions of the Gonzales Feed Mill due to the deployment of post-litigation "remediation" teams to spoliate the site; and

8. **GRANT** such other and further relief as the Court deems just and proper to deter future discovery fraud.

---

**DATED:** June 23, 2026

---

Respectfully Submitted,

*/s/ Marcus Sheffield*                                        */s/ Tory Robinson (with permission)*

**Marcus T. Sheffield,** Plaintiff *Pro Se*          **Tory Robinson,** Plaintiff *Pro Se*

---

## CERTIFICATE OF SERVICE

---

We hereby certify that on this **23rd day of June 2026**, a true and correct copy of the foregoing was filed via the Court's CM/ECF system; and a true and correct copy was sent via email to Defendants' counsel of record, **Linda Schoonmaker,** at lschoonmaker@seyfarth.com.

---

*/s/ Marcus Sheffield*                                        */s/ Tory Robinson (with permission)*

**Marcus T. Sheffield,** Plaintiff *Pro Se*          **Tory Robinson,** Plaintiff *Pro Se*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), we hereby certify that we have conferred in good faith with defense counsel regarding the discovery disputes and evidentiary issues surrounding these productions. Specifically, Plaintiff Sheffield formally warned Defense Counsel of these specific Rule 26(g) and Rule 37 violations in writing via email on **April 28, 2026**.

We further conducted a telephonic meet-and-confer with Dena Moghtader regarding the video omissions, and Plaintiff Sheffield conferred via email with lead counsel Linda Schoonmaker regarding the remaining discovery and exhibit deficiencies. Defendants ignored these warnings, stand by their responses, exhibits, and objections, and refuse to amend their discovery answers. Therefore, this Motion is **OPPOSED**.

*/s/ Marcus Sheffield*                                    */s/ Tory Robinson (with permission)*

**Marcus T. Sheffield,** Plaintiff *Pro Se*              **Tory Robinson,** Plaintiff *Pro Se*

## INDEX OF EXHIBITS

1. **EXHIBIT A:** Plaintiffs' April 28, 2026, Rule 37 Conferral Emails

2. **EXHIBIT B:** Disciplinary Action Notification for Plaintiff Tory Robinson (*Bates: Tyson-Sheffield 000248*)

17