IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHEFFIELD and ROBINSON, | § | |
| Plaintiffs, | § | |
| v. | § | SA:25-CV-1442-XR (HJB) |
| TYSON FOODS, INC., et al., | § | |
| Defendants. | § | |

---

**PLAINTIFF SHEFFIELD'S REBUTTAL IN SUPPORT OF**

**MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT XIII,**

**REQUEST FOR HEARING, AND MOTION TO PARTIALLY LIFT STAY**

---

**TO THE HONORABLE COURT:**

Plaintiff Marcus Sheffield ("Plaintiff") respectfully submits this Rebuttal to address new

evidence introduced by Defendants, compounding logical paradoxes, legal fallacies, and

misapplications of estoppel doctrine advanced in Defendants' Surreply.

Pursuant to the Court's June 17, 2026 Text Order in which the Court Ordered a deadline of June

29, 2026 for Plaintiff Sheffield to submit this final responsive briefing in support of his Motion

for Partial Summary Judgment on Count XIII (Dkt. 69), and he would show the following:

---

## I. INTRODUCTION

Defendants' Surreply is a masterpiece of procedural misdirection. Unable to deny the objective reality that they have been in absolute statutory default for over 378 days regarding their obligation to provide mandatory ERISA Plan Documents, Defendants instead attempt to rely on counsels web weaved of logical paradoxes, semantic wordplay, and false claims of waiver. Defendants' use the pleading in an attempt to escape summary liability by erecting hyper-technical shields built on circular reasoning and legally obsolete records.

This Rebuttal systematically dismantles Defendants' claim that Plaintiff waived his estoppel arguments, exposes the legal fallacies underpinning their "wrong entity" defense, and finalizes the destruction of their "Exhibit D" defense through the definitive comparator experience of Co-Plaintiff Tory Robinson. By dismantling the logical and legal fallacies underlying Defendants' arguments, clarifying the proper application of equitable estoppel, and introducing devastating comparator evidence from the active 2023 rehire window, it is evident that Defendant Tyson Foods, Inc. remains in active, willful, and ongoing statutory default.

## II. DEFENDANTS' FALSE "WAIVER" ARGUMENT AND THE CORRECT APPLICATION OF EQUITABLE ESTOPPEL

### A. Plaintiff's Equitable Estoppel Argument is Properly Before the Court

In their Surreply (Dkt. 84), Defendants attempt to dismiss Plaintiff's estoppel argument is waived because it was raised for the first time in his Reply brief. This argument fundamentally misconstrues federal summary judgment procedures. Plaintiff did not assert a new claim or an independent cause of action in his Reply. Rather, Plaintiff properly invoked the defensive doctrine of Equitable Estoppel to directly answer, rebut, and neutralize the "wrong address /

wrong entity" affirmative defense that Defendants chose to raise for the first time in their Response Opposition brief (Dkt. 77).

A Reply brief is the precise, lawful mechanism designated for a moving party to counter newly raised defensive arguments and evidentiary exhibits presented by the non-moving party. Defendants cannot systematically use their Opposition to introduce an administrative "shell game" defense and then claim Plaintiff is procedurally barred from explaining how their own claim-routing documentation equitably estoppels that very defense. Plaintiff's Rebuttal is properly before the Court.

**B. The "Wild Goose Chase" and Structural Misdirection**

Moving to the merits, Defendants argue that Equitable Estoppel is inapplicable because there was no "material misrepresentation," asserting that the Dallas, TX address provided for *Program Administrators, LLC* was factually accurate for appeals. This defense relies on a complete distortion of the equitable framework established by the Fifth Circuit. The equity fracture here does not stem from whether the physical street name of their proxy was spelled correctly; the misrepresentation lies in Tyson's calculated structural misdirection.

Tyson's official, written claim correspondence to Plaintiff commanded him to send his appeals, inquiries, and relevant documentation regarding the *Texas Injury Benefit Plan* away from corporate headquarters and directly to its designated administrative proxy, *Program Administrators, LLC*, in Dallas, TX. Tyson entirely omitted any corporate contact protocol for its principal office in Fayetteville, AR from those claim-routing directives.

In *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, **215 F.3d 475, 481–82** (5th Cir. 2000), the Fifth Circuit explicitly applied equitable estoppel to stop a plan from utilizing technical administrative bars when the employer's own corporate layout and loose internal

guidance led a claimant on a "wild goose chase." Plaintiff did not choose the Dallas address out of mid-air; he followed Tyson's explicit internal administrative pipeline. Having channeled the unrepresented worker directly to its third-party agent, Tyson is equitably estopped from utilizing compliance with its own directives as a shield to evade liability under **29 U.S.C. § 1132(c)(1)**.

**C. Notice to the Delegated Agent Constitutes Notice to the Principal**

The "wrong entity" defense is further eviscerated under basic principles of agency law. The record establishes that Tyson Foods, Inc. explicitly delegated the administration of *Texas Injury Benefit Plan* claims to *Program Administrators, LLC*. On March 1, 2025—well within the 30-day statutory window—an authorized representative at this delegated facility signed the Certified Mail return receipt for Plaintiff's document demand. Notice to an expressly authorized administrative agent acting within the scope of its delegated claims duties operates as notice to the principal Plan Administrator itself. Tyson cannot weaponize its own outsourced administrative enterprise to create a liability blackout, nor can it use its proxy's receipt of the demand as an excuse for its own failure to produce the statutory documents.

---

**III. DEFENDANTS' LOGICAL AND SEMANTIC FALLACIES**

Defendants' attempt to escape liability relies on a series of distinct logical fallacies that collapse under minimal scrutiny.

**A. The "Fayetteville Paradox" (Demanding Clairvoyance)**

In their Surreply, Defendants attempt to invalidate Plaintiff's Certified Mail document request by claiming it should have been mailed to the corporate Plan Administrator address in Fayetteville, Arkansas. Defendants' sole justification for this rigid requirement is that the Fayetteville address is printed *inside the Summary Plan Description (SPD)*.

This argument creates an absurd, bad-faith paradox: Defendants are arguing that an injured worker must read the secret, withheld document in order to learn the proper address to request the secret, withheld document. The Fifth Circuit does not require clairvoyance from ERISA participants. Because Defendants actively withheld the SPD, Plaintiff was forced to rely on the only written documentation Tyson's internal network provided to him: *his formal claim correspondence*. Plaintiff followed Tyson's own written directions perfectly, mailing his request to the designated proxy address explicitly listed on his claims file letters. (*see* Dkt. 9, at 182-183; Dkt. 16 at 157.)

## B. The Chronological Fallacy ("Litigation as a Substitute for Compliance")

Defendants audaciously argue that because Plaintiff eventually attached the Master Plan Document to his *First Amended Complaint* (Dkt. 16) (filed in January 2026), he "already possessed" the documents, thereby rendering his statutory request moot and penalties unwarranted. This argument relies on a deceptive chronological fallacy that completely rewrites the timeline of discovery.

Plaintiff made his formal, certified statutory request on *February 19, 2025*. The fact that Plaintiff was forced to navigate the administrative appeals process completely blind for 11 months before finally securing the Master Plan Document through alternative means proves absolutely nothing except that Defendants were in default for almost a year. An unrepresented worker's eventual success in uncovering the rules of a plan through alternative means does not retroactively absolve the Plan Administrator of its strict statutory duty to furnish the documents *within 30 days of the request*. Furthermore, Defendants remain in active default to this day regarding the Summary Plan Description (SPD), which has never been produced pursuant to the February 19, 2025 request.

**C. The Semantic Fallacy ("Regulatory vs. Statutory" Wordplay)**

Defendants argue that Plaintiff's February 19, 2025 request asking for "*ALL information and documentation relevant to my claim*" tracked Department of Labor claims-procedure regulations rather than the specific statutory language of **29 U.S.C. § 1024(b)(4)**. Therefore, Defendants argue the request failed to provide "clear notice" that the SPD was requested.

This is a bad-faith semantic shell game. The Fifth Circuit's "clear notice" standard does not require a *pro se* participant to cite specific statutory codes or type magic legal words. A formal, certified written request demanding "***ALL information and documentation***" governing a specific claim inherently and unmistakably encompasses the foundational Plan Documents *and* SPD that dictate the rules, deadlines, networks, and definitions of that exact claim. It is a legal impossibility to evaluate what is "relevant to a claim" without reviewing the foundational baseline document that dictates the claim's very existence. Any good-faith Plan Administrator receiving a comprehensive request for a claim file knows the SPD is the mandatory starting point.

**D. Summary Judgment is Legally Mandated on the Master Plan Document**

Even if the Court were to accept the legal fiction that Exhibit D (Plaintiff's 2022 orientation sign-off sheet) survived his subsequent termination, Defendants' defense still fails completely as a matter of law. The explicit, plain text of **29 U.S.C. § 1024(b)(4)** provides verbatim:

> "*The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, **and** the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.*" (emphasis added)

By the unambiguous mandate of this statute, the disclosure requirement is cumulative, not selective. A Plan Administrator is legally required to furnish not merely the Summary Plan Description, but also any "contract, or other instruments under which the plan is established or operated"—which *fundamentally encompasses* the Master Plan Document.

Defendants' entire summary judgment defense rests upon Exhibit D, which is explicitly and strictly titled: *"Acknowledgment of Receipt of the Summary Plan Description."* The form mentions only the SPD; there is **not one single mention** of the underlying Master Plan Document anywhere within that record. Because Plaintiff's request covered all governing instruments, and because Tyson bears the summary judgment burden to raise a genuine dispute of material fact regarding its disclosure history, their complete failure to produce any evidence showing a prior disclosure of the Master Plan Document means **summary judgment on Count XIII must be granted in Plaintiff's favor as a matter of law**.

### E. The Prejudice Fallacy and the Fact of Separation

Defendants argue Plaintiff suffered no prejudice, claiming the medical invoices do not show that a term in the SPD would have altered his claim outcome. This argument entirely ignores the reality of Plaintiff's employment status at the time of the request.

By the time Plaintiff formally requested his plan documents on February 19, 2025, he was no longer an active employee. Plaintiff had already been formally terminated and permanently separated from the company months prior, on December 20, 2024. Consequently, he was completely cut off from company networks, stripped of internal guidance, and left entirely on his own. This absolute operational blackout forced Plaintiff to navigate a complex maze of compounding medical liabilities completely blind, leaving him exposed to collection agencies for over $13,430.78 in unmanaged medical debt. Pushing a terminated, *pro se* worker into an

7

administrative vacuum while executing rapid claims denials is the definition of statutory prejudice.

Furthermore, the willfulness of Tyson's default is cemented by their ongoing defiance in this very Court. Over a year after the 30-day statutory deadline expired, Defendants produced hundreds of pages of personnel records during Rule 26(a)(1) *Initial Disclosures*, but *still* intentionally withheld the SPD and Master Plan Document.

---

### IV. THE "EXHIBIT D" DECEPTION AND THE TORY ROBINSON COMPARATOR

As their final shield, Defendants retreat to "Exhibit D"—a 2022 Acknowledgment of Receipt for the SPD. Defendants ask this Court to accept a signature from a legally severed, defunct employment term at the Haltom City, TX facility to excuse a 378-day failure to provide Plan Documents during Plaintiff's subsequent, separate 2023–2024 employment term at the Dallas, TX facility. As demonstrated above, Exhibit D provides zero evidentiary cover for the withheld Master Plan Document.

To definitively expose the factual bankruptcy of Exhibit D regarding Plaintiff's *active* 2023–2024 employment phase, the Court need only look to the attached **Declaration of Tory Robinson (Exhibit A)**. As sworn under penalty of perjury, Co-Plaintiff Robinson serves as the perfect, identical comparator:

1. He was hired on the **exact same day** as Plaintiff Sheffield (October 9, 2023).
2. He was assigned to the **exact same facility** (Dallas Plant).
3. He worked in the **exact same Formulation Department** under the **exact same supervisor** (Precious Johnson).

**During this shared October 2023 onboarding and orientation process, Plaintiff Robinson never received, signed, or acknowledged the Summary Plan Description (SPD) nor the Injury Benefit Plan.**

Under **Fed. R. Civ. P. 56(c)(4)**, Mr. Robinson's declaration constitutes competent, undisputed summary judgment evidence of Defendants' actual onboarding practices at the Dallas, TX plant in October 2023.

The fact that an identical comparator, who went through the exact same orientation cohort at the exact same time, was never furnished with the mandatory ERISA documents proves objectively that Tyson did not distribute the SPD or secure valid acknowledgments during Plaintiff's active 2023 employment phase. Defendants cannot retroactively cure their 2024–2025 statutory default by dusting off a 2022 signature from a severed employment term.

---

## V. REQUEST FOR HEARING AND MOTION TO PARTIALLY LIFT STAY FOR LIMITED PURPOSE

Pursuant to Local Rule CV-7(g), Plaintiff Marcus Sheffield respectfully requests that the Court schedule an oral hearing on his Motion for Partial Summary Judgment on Count XIII. Concurrently, Plaintiff moves the Court to **partially lift the discovery and litigation stay** currently in effect for the sole, limited purpose of hearing and adjudicating this statutory ERISA disclosure claim.

Good cause exists to lift the stay and schedule this hearing **prior to the upcoming court-ordered mediation settlement conference**. The resolution of Count XIII does not depend on broader merits discovery; it rests entirely on an independent, undisputed chronological record of certified mail receipt and an uncontested evidentiary void regarding the Master Plan Document.

Resolving this distinct statutory penalty claim before the parties enter mediation is essential to judicial economy and a successful global resolution. Liquidating Tyson's accrued statutory liability—which currently stands at the maximum penalty of $41,580.00—will establish the concrete economic boundaries of this dispute, preventing Defendants from leveraging administrative ambiguity as an unfair negotiation shield. Plaintiff respectfully requests that the stay be partially lifted for this singular purpose and that oral argument be set in advance of the settlement conference.

## VI. CONCLUSION

By completely withholding the "rulebook," Defendants forced Plaintiff to navigate a complex maze of compounding medical liabilities completely blind, resulting in over $13,430.78 in unmanaged medical debt. Defendant Tyson Foods, Inc. cannot weaponize a paradox to demand clairvoyance, it cannot hide behind its own delegated claims administrator to dodge liability, it cannot use a dead 2022 signature to cover up an active 2023 default, and it has *offered no defense whatsoever* for its ongoing refusal to produce the Master Plan Document.

Defendants' Surreply introduces no genuine dispute of material fact, only logical fallacies, manufactured legal traps, and false claims of procedural waiver. The undisputed record confirms that a valid, certified request was made to the designated administrative agent, and Tyson Foods, Inc. willfully failed to provide the mandatory documents for over 378 days.

Plaintiff respectfully requests that the Court reject Defendants' semantic shell games, strike the obsolete Exhibit D, partially lift the stay for this limited purpose, and GRANT Partial Summary Judgment on Count XIII for the maximum statutory penalty of $41,580.00.

10

**DATED:** June 29, 2026

---

Respectfully Submitted,

*/s/ Marcus T. Sheffield*

**Plaintiff**, *Pro Se*

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on June 29, 2026, a true and correct copy of the foregoing was served via electronic mail on the following:

| | |
|---|---|
| Linda C. Schoonmaker lschoonmaker@seyfarth.com | **Seyfarth Shaw LLP** |
| Dena Moghtader dmoghtader@seyfarth.com | Counsel for *Defendants* |
| Tory Robinson toryrobinson445@yahoo.com | *Co-Plaintiff, Pro se* |

---

*/s/ Marcus T. Sheffield*

**Plaintiff**, *Pro Se*

11